**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

JUSTIN HOWARD, CHRIS TAYLOR, BILLY MAYVILLE, SEAN BOWLING, individually and on behalf of all other similarly situated,

       *Plaintiffs*,

v.

COOL AIR MECHANICAL, LLC,

       *Defendant*.

Civil Action No. 1:23-cv-02725-SCJ

## DEFENDANT'S RESPONSE IN OPPOSITION TO NAMED PLAINTIFFS' MOTION FOR ADDITIONAL NOTICE OF ACTION BY TEXT MESSAGE TO PUTATIVE CLASS MEMBERS

In their Motion, Plaintiffs contend the Court authorized notice process here was deficient and, as a result, a second round of notice should be sent by text message to a subset of the Putative Collective. Alternatively, Plaintiffs seek to compel Defendant to provide contact information for these same individuals so Plaintiffs' counsel may contact them directly to solicit their participation in this action. To support these extraordinary requests, Plaintiffs contend the notice process was deficient and inadequate for four reasons: (1) the Parties "agreed that additional notice [might] be necessary if more than 15% of the emails were unopened or postal mail returned;" (2) thirteen members of the Putative Collective were never sent emails; (3) fifty-four emails were returned as undeliverable; and (4) seventy-two

emails were not opened by their recipients. (Dkt. No. 22-1, p. 2). But Plaintiffs' extraordinary request to send supplemental notice on top of the original notices should be denied because the Court approved notice process was both reasonable and adequate.

As an initial matter, the Parties did not agree additional notice may be necessary. Instead, the Parties' Stipulation provides that Plaintiff may file a motion to obtain contact information for those individuals who do not open or receive emailed notice, and that Defendant reserves the right to oppose any such motion. (Dkt. No. 14, p. 5). Moreover, there is no evidence to suggest the original notices were ineffective and supplemental notice is necessary because thirteen individuals did not have email addresses and fifty-four emails were undeliverable. This is particularly true where, as here, each facet of the Court approved notice process was timely and successfully accomplished. Additionally, the seventy-two unopened emails reflects nothing more than the recipients' lack of interest in joining this case.

Further, contrary to Plaintiffs' suggestion, nothing in the Fair Labor Standards Act mandates that notice be sent in every case, much less a second supplemental notice. Here, the Parties agreed to a fair and adequate notice process whereby notice of this action would be conducted in a neutral fashion with a third-party administrator distributing the Court authorized notice by first class mail and email (to the extent Defendant's records contained an email address). This process was

2

reviewed and approved by this Court in advance, and Defendant and the Administrator fully complied with this Court's Amended Order. Importantly, Plaintiffs do not contend that Defendant interfered with the notice process in any way. Rather, Plaintiffs suggest that for notice to be adequate and effective, every single Putative Collective member must receive *and* open each form of notice. Unsurprisingly, Plaintiffs' do not cite a single case to support this outlandish proposition. Nor could they. Unlike a Rule 23 class action, notice in a collective action is not subject to due process considerations since putative collective members are not bound to a collective they have not affirmatively joined. *See Mickles, et al. v. Country Club, Inc.*, 887 F.3d 1270, 1275-76 (11th Cir. 2018). But, even if notice in a collective was subject to due process requirements, which it is not, the U.S. Supreme Court has long held that attempted notice by first class mail satisfies any such requirements.

## I.    FACTUAL BACKGROUND

On June 17, 2023, Plaintiffs Justin Howard, Chris Taylor, Billy Mayville and Sean Bowling filed this action on behalf of themselves and others who are allegedly similarly situated. (Dkt. No. 1). In their Complaint, Plaintiffs allege Defendant failed to pay certain employees for all hours worked and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.* ("FLSA"), and in breach of contract. *Id.* On August 28, 2023, Defendant answered Plaintiffs' Complaint. (Dkt. No. 8).

Defendant denies that it violated the FLSA or any other laws and denies that Plaintiffs or any other individuals are entitled to any relief.

## A. The Parties Joint Stipulation and this Court's Amended Order.

Shortly before Defendant filed its answer, Plaintiffs filed their Motion for Conditional Collective Action Certification and Issuance of Notice to Putative Collective Members. (Dkt. No. 7). Rather than conduct pre-conditional certification discovery and engage in prolonged adversarial motion practice, Defendant proposed that the Parties instead met and confer to discuss the possibility of entering into a stipulation in which Defendant would consent to conditional certification for notice purposes only. During their initial meet and confer discussions, the Parties negotiated who would send the notice, how it would be sent and the mechanism to submit opt-in consents. With respect to who would send the notice, Defendant requested that a qualified third-party administrator with adequate data and privacy protection protocols be retained to administer the notice (the "Administrator"). Defendant proposed that Plaintiffs retain the Administrator. While Plaintiffs agreed to using a third-party administrator and further agreed to Rust Consulting as the Administrator, they requested that Defendant be responsible for retaining and paying the Administrator. Ultimately, Defendant agreed to Plaintiffs' request and retained Rust Consulting as the Administrator for this matter (as agreed by the Parties).

As for how notice would be sent, Plaintiffs' counsel initially requested that

notice be sent by text message. Defendant objected (and continues to object) to sending notice by text message for a host of reasons including, but not limited to, concerns related to privacy and violations of federal law. In an effort to compromise, however, Defendant stated that it would agree to send notice by first class mail and email. The Parties ultimately agreed notice would be sent by mail and email. At the last minute, Plaintiffs reserved the option of filing a motion to obtain the contact information of individuals if more than 15% of emailed notices were unopened or undeliverable. Defendant did not agree that any percentage of unopened or undeliverable emails would indicate that notice was ineffective or that additional notice might be necessary.[1]

The Parties also negotiated the content of the notice, how members of the Putative Collective could access the notice and consent form, and whether Plaintiffs' counsel could contact members of the Putative Collective. By way of example, in addition to providing a physical consent form that could be mailed back to the Administrator, Plaintiffs' counsel requested that the Administrator create a website

---

[1] Plaintiffs' Motion incorrectly states "the parties agreed that additional notice may be necessary if more than 15% of the emails were unopened or postal mail returned." (Dkt. No. 22-1, p. 2). This assertion materially misrepresents the Parties' Stipulation. No such agreement was made. The Stipulation is clear on its face, "[i]f the number of unopened or undelivered email exceeds 15%, Plaintiff may file a motion to obtain the contact information for those individuals, . . . [and] Defendant reserves the right to oppose any such motion." *Id.* Defendant opposes Plaintiffs' Motion and does not agree additional notice by text message or any other method is necessary.

where members of the Putative Collective could access the notice and submit a digital consent form. Plaintiffs' counsel also requested that, in addition to a copy of the website's URL, the notice include a QR code members of the Putative Collective could scan to access the website. Initially Defendant rejected the use of a QR code due to trademark and licensing concerns. However, after discussing these concerns with Plaintiffs' counsel and the Administrator, Defendant agreed to the use of a QR code. Plaintiffs' counsel also agreed he would not initiate contact with members of the Putative Collective and that the Court approved notice process would be the exclusive means used to notify the Putative Collective of the opportunity to join this action.

On October 4, 2023, the Parties filed their Stipulation to Conditionally Certify Collective Action Pursuant to 29 U.S.C. § 2016(b) for Notice Purposes Only ("Stipulation"). (Dkt. No. 14). This Court granted conditional certification and authorized notice pursuant to the terms of the Stipulation (Dkt. No. 16), and on November 21, 2023, issued the operative amended order ("Amended Order") to identify Rust Consulting as the "Administrator," as agreed to by the Parties. (Dkt. No. 17).

Pursuant to the Amended Order, this case was conditionally certified as a collective action for notice purposes only for the following "Putative Collective":

> All persons who work/worked for Cool Air Mechanical, LLC as Plumbers, HVAC Technicians, or HVAC

> Installers providing cooling, heating, or plumbing repair and/or installation services who were allegedly not paid an overtime premium or correct overtime premium for hours worked over 40 in a workweek, and/or were allegedly not paid for all hours worked during the period from June 17, 2020 to June 17, 2023.

*Id.* at 4.

The Court also approved the Parties' proposed notice and ordered the distribution of notice by mail and email as set forth in the Stipulation. *Id.* The Court further order that "[t]his notice shall be the sole manner that Plaintiffs' Counsel initiates contact with members of the Putative Collective during the opt-in period, with the exceptions [that Plaintiffs or their counsel may respond to inquires made to them by members of the Putative Collective during the opt-in period]." *Id.* at 4–5.

**B.      Overview of the Notice Process.**

Pursuant to the Amended Order, Defendant timely provided the Administrator a list in Excel format of the names, last-known personal mailing addresses, and last-known personal email addresses (if known) of all members of the Putative Collective by the Court ordered deadline. *See* Declaration of Jennifer Mills ("Rust Decl."), ¶10. This list contained information for 217 members of the Putative Collective, including the four named Plaintiffs. *Id.* Defendant subsequently identified 6 other potential members of the Putative Collective and provided their names and last-known contact information (if available) to the Administrator. *Id.* at ¶11. To ensure the data provided to the Administrator was as comprehensive as possible, even for

former employees without a personal email address, Defendant included their Cool Air email addresses.

The Administrator distributed notice by first class mail and email to the group of 217 individuals on January 5, 2024, and to the group of 6 other individuals on January 9, 2024. *Id.* at ¶¶13-14. Notice was mailed to all 223 members of the Putative Collective and emailed to the 210 last-known email addresses for the members of the Putative Collective. *See* Weekly Status Report, Exhibit A. As directed by the Parties' Stipulation and the Amended Order, the Administrator performed skip traces for all first class mailed notices returned as undeliverable and timely re-mailed such notices using any new address information. Rust Decl. at ¶15.

The sixty (60) day opt-in period agreed to by the Parties and approved by this Court closed on March 5, 2024, for the group of 217 individuals and on March 9, 2024, for the 6 other individuals. *Id.* at ¶¶13-14. To date, 17 individuals joined this case as opt-in plaintiffs. (Dkt. Nos. 18–21, 23, 28, 29).

Importantly, as was the expectation of the Parties when selecting the Administrator, the notice process in this case was conducted in a fair and neutral matter and without interference from the Parties or their counsel.

**C.     The Efficacy of the Notice Process.**

On March 6, 2024, the Administrator provided a weekly status report indicating that an overwhelming majority of the 223 mailed and 210 emailed notices

were successfully delivered. *See* Exhibit A. Only 54 emailed notices were undeliverable and skip traces could not locate new address information for only 10 of the mailed notices returned as undeliverable. *See id.* Additionally, of the 10 individuals for whom skip traces failed to locate new address information, only 2 also had undeliverable emailed notices and 1 did not have an email address. *See* Declaration of Pierre-Joseph Noebes ("Noebes Decl.") at ¶10.[2] As such, at least 220 of the 223 members of the Putative Collective (i.e., 98.65%) received notice by mail and/or email. Further demonstrating the success of the notice process, and particularly the efficacy of mailed notice, is the fact that 9 of the 19 individuals who joined as opt-in plaintiffs either did not have an email address or emailed notice was sent to their former Cool Air email address. *See* Noebes Decl. at ¶4. It is indisputable that, despite the lack of emailed notice, these 9 individuals received notice and did so as a result of the mailed notice.

## II.    ARGUMENT AND CITATION TO AUTHORITY

### A.    Plaintiffs Fail to Establish the Court Approved Notice Process was Ineffective.

This Court does not need to send additional notice of this action to any members of the Putative Collective. The Parties agreed to and this Court approved an effective notice process, which required, among other things, that Defendant

---

[2] Emailed notice was successfully sent to the 7 remaining individuals. *Id.* at ¶11.

provide the last known mailing addresses and email addresses for members of the Putative Collective (as reflected in Defendant's records) to the Administrator. This process did not require Defendant to independently locate new contact information or verify the information in its business records. Defendant timely provided the relevant information to the Administrator, which distributed notice in accordance with the Parties agreement and this Court's Amended Order. Despite this, Plaintiffs now assert the notice process they agreed to was ineffective because some individuals did not open the emailed notice and others did not receive emailed notice because the email addresses in Defendant's records were not their current email addresses.[3] However, the fact some individuals declined to open their email notice or could not be reached at the email address(es) in Defendant's records does not mean the notice process was ineffective or inadequate.

It is a well settled principle that the purpose of the court-managed opt-in process is to ensure notice of a collective action is fair, accurate, and timely. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). As an initial matter, Plaintiffs do not challenge the content of the notice or seek to correct some

---

[3] Plaintiffs also contend Defendant and the Administrator are required to investigate and locate additional information for members of the Putative Collective outside of Defendant's systems. (Dkt. No. 22-1, p. 3 n. 3). Tellingly, despite alluding to some purported requirement established "by Supreme Court precedent," Plaintiffs do not cite to any case authority imposing such an obligation. *Id.* And, Defendant is unaware of any such authority.

10

misinformation. Instead, Plaintiffs' Motion only seeks to "stir up litigation" and drive up the opt-in rate by sending out a supplemental notice to members of the Putative Collective who have already received notice. To accomplish this, Plaintiffs effectively contend that multiple forms of notice must be sent and each member of the Putative Collective must actually receive and open a notice for it to be effective. However, the case law does not support Plaintiffs' request for additional notice. *See Zulauf v. Amerisave Mortg. Corp.*, 2011 WL 12677018, at *23 (N.D. Ga. Nov. 23, 2011) ("The Court agrees that it is not appropriate to inundate potential opt-in claimants with multiple offers to join this lawsuit. Fairness is, however, promoted by sending a single, court-approved notice to [putative collective members] who may be permitted to opt into this action."). Further, numerous district courts have found a multiplicity of notices tends to "unnecessarily stir up litigation," and inappropriately encourage individuals to join a lawsuit. *See, e.g., Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365, 373 (N.D. W. Va. 2012); *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 753-54 (N.D. Ill. 2010) (reminder notice "unnecessary and potentially could be interpreted as encouragement by the Court to join the lawsuit"); *Calderon v. Geico Gen. Ins. Co.*, 2011 WL 98197, at *8 (D. Md. Jan. 12, 2011) (reminders have potential to "unnecessarily 'stir up litigation'"); *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 220 (E.D. Mich. 2010) (noting once individuals receive notice, "it is their responsibility to act as they see fit").

Additionally, Plaintiffs' arguments conveniently ignore the well settled rule established by the Supreme Court that notice by traditional mail is an efficient and effective means of communicating notice,[4] as well as the undisputed efficacy of mailed notice in this case. *See supra* I.C.; *see also* (Dkt. No. 27, p. 2) ("[A]ll members of the Putative Collective have received notice of this action in at least one form (i.e., U.S. Mail)."). In fact, Plaintiffs' Motion does not assert or even suggest that mailed notice was ineffective or inadequate in this case. Indeed, Plaintiffs conveniently ignore the notices sent by traditional mail. Rather, Plaintiffs claim notice was ineffective because more than 15% of the emailed notices were not opened or were undeliverable.[5] (Dkt. No. 22-1, p. 9). Plaintiffs claim to have "substantial evidence" showing how the "difficulties in email notice have hindered the accurate and timely notice" of this case to members of the Putative Collective, yet Plaintiffs offer no such evidence in support of their Motion. *Id.* at 11. Instead, Plaintiffs rely on outdated law review articles to support their belief that notice was

---

[4] *But see Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). *See also Dusenbery v. U.S.*, 534 U.S. 161, 172 (2002) (finding that, even in matters involving the forfeiture of property initiated by the government, mailed notice to petitioner's place of incarceration (i.e., last known address) was adequate).

[5] Upon learning of the undeliverable emailed notices, Defendant investigated and determined 34 were sent to former Cool Air email addresses of former employees. Defendant offered to send a second mailed notice by first-class mail to the 34 individuals for whom it had former Cool Air email addresses, but Plaintiffs' counsel rejected this offer. *See* Noebes Decl. at ¶¶5–6.

ineffective here because the opt-in rate was less than 10%. *Id.* at 10.[6] Plaintiffs, however, fail to explain why these sample opt-in rates should be used as a measure to determine the efficacy of the notice in this case. Even if opt-in rates were a well-recognized method of measuring the efficacy of a notice **(which they are not)**, the opt-in rate exceeding 7.6% here is well within a reasonable margin of error of the 10% average referenced by Plaintiffs.

Further, Plaintiffs' assumption that some individuals did not actually receive notice does not render the process ineffective. Contrary to Plaintiffs' assertion, adequate and effective notice is not determined by each member of the Putative Collective's actual receipt of notice. No such requirement exists within the FLSA and undersigned counsel has not found a single case suggesting that anything less than actual receipt of notice is insufficient. Indeed, in the Rule 23 context, courts have consistently held "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice *reasonably calculated*, under all the circumstances, to apprise interested parties of the pendency of the

---

[6] Defendant notes both articles cited by Plaintiffs also state that it is not unusual for opt-in rates to fall well below 10%. *See* Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 BERKELEY J. EMP. & LAB. L. 269, 292 (2008) (referencing cases with opt-in rates of 9.5%, 8.9%, 7.8%, 4.2%, 2.7%, and 2%); Charlotte S. Alexander, *Would an Opt In Requirement Fix the Class Action Settlement? Evidence from the Fair Labor Standards Act*, 80 Miss. L.J. 443, 466–67 (2010) (stating that opt-in rates for some of the FLSA cases reviewed were 0% and referencing opt-in rates provided by a "highly experienced FLSA attorney" as low as 5%).

action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314 (emphasis added). Even in Rule 23 class actions, where an absent class member's due process rights are implicated by class notice procedures (unlike in Section 216(b) collective actions), there is no "actual receipt of notice" requirement. *In re Cherry's Petition to Intervene*, 164 F.R.D. 630, 635–36 (E.D. Mich. 1996) ("The language of Rule 23 . . . does not require actual receipt of notice. [. . .] Rule 23 appears to only require that notice be directed, or sent, not that it actually be received."), citing *Schroeder v. City of New York*, 371 U.S. 208, 214 (1962) (The requisite "good faith effort" to provide notice is "an obligation which the mailing of a single letter would have discharged.").[7]

Where, as here, Defendant provided the Putative Collective members' names, last-known mailing addresses and last-known email addresses (if available) to an experienced and reputable third-party Administrator, and notice was sent to each member of the Putative Collective by email and mail (and remailed if skip trace efforts located new address information), such procedures are sufficient to have facilitated the best notice practicable. As such, the notice process in this case (i.e., sending notice by traditional mail and email, and remailing any undeliverable notices

---

[7] *See also Dusenbery*, 534 U.S. at 170 (explaining that, even in the context of matters involving property forfeiture initiated by the government, "[t]he Due Process Clause does not require heroic efforts by the [defendant] to assure the notice's delivery, nor does it require the [defendant] to substitute [the plaintiff's] proposed procedure that would have required verification of receipt . . . .").

14

to newly located personal addresses), as ordered by this Court and carried out by the Administrator, afforded the members of the Putative Collective more than sufficient notice of this action. *George v. Academy Mortgage Corp.*, 369 F. Supp. 3d 1356, 1368 (N.D. Ga. 2019) (finding that the "best notice practicable was furnished" where "[e]ach facet of the Notice Program[, which included the administrator receiving the names and last known addresses of all potential class members, timely issuing mailed and emailed notice, conducting skip tracing and reissued mailed notice accordingly for any returned undeliverables,] was timely and properly accomplished."). Accordingly, Plaintiffs' Motion should be denied.

**B.      Sending Additional Notice by Text Message is Not Appropriate.**

**1.      Plaintiffs Fail to Demonstrate that Additional Notice by Text Message is Necessary.**

The notice process in this case was effective. As discussed above, at least 98% of the Putative Collective received notice by mail and/or email. *See supra* I.C. As such, any additional forms of notice (such as distribution via text) should not be used unless Plaintiffs present facts showing that the notice process was deficient. But, Plaintiffs have made no such showing; thus, additional notice by text message is unnecessary and should be denied. *See Sellers v. Sage Software, Inc.*, 2018 WL 5631106, at *5 (N.D. Ga. May 25, 2018) (denying notice via text message as unnecessary).

Importantly, Plaintiffs have not cited to a single case in which a court approved sending a supplemental notice by text message after every facet of the court ordered notice process was successfully accomplished. And Defendant is unaware of any authority in which <u>supplemental</u> notice by text message was approved by a court. Instead, each of the cases relied on by Plaintiffs to show notice by text message is appropriate are distinguishable from this case because they reflect unique circumstances that are not relevant here.[8]

Even where permitted as a part of an initial notice process, many courts first require the plaintiff to provide a legitimate justification for using text messaging as an additional method to send notice. *See, e.g., Bennett v. BT's on the River, LLC,*

---

[8] *See, e.g., Kirk v. Equity Prime Mortg. LLC*, 2018 WL 11456272 (N.D. Ga. Nov. 19, 2018) (the plaintiff's motion for FLSA conditional certification and notice was unopposed); *Johnson v. Lazer Spot, Inc.*, 2024 WL 227799 (N.D. Ga. Jan. 19, 2024) (the court indicated that notice by text message was appropriate without argument from either party); *Grajeda v. Verified Moving Pros, LLC*, 2022 WL 17987191 (S.D. Fla. Sept. 22, 2022) (the parties jointly moved for notice by text message); *Lawrence v. A-1 Cleaning & Septic Sys., LLC*, 2020 WL 2042323 (S.D. Tex. April 28, 2020) (the court speculating that sending notice by text message would increase the likelihood that it would be received); *Irvine v. Destination Wild Dunes Mgmt, Inc.*, 132 F. Supp. 3d 707 (D.S.C. 2015) (the court speculating that notice by text message was appropriate because traditional methods of communication may be obsolete); *Landry v. Swire Oilfield Servs., LLC*, 252 F. Supp. 3d 1079 (D.N.M. 2017) (approving notice by text message because employees were dispersed to worksites around the country and away from their homes for weeks or months); *Warren v. MBI Energy Services, Inc.*, 2020 WL 937420 (D. Colo. Feb. 25, 2020) (approving notice by text message because employees worked away from home for long periods of time); *Bernardez v. Firstsource Sol. USA, LLC*, 2019 WL 4345986 (W.D. Ky. Sept. 12, 2019) (the defendant did not oppose sending notice by text message).

16

2023 WL 2838076, at *7 (S.D. Fla. Jan. 31, 2023) ("Plaintiffs have not demonstrated a need to send notice via text message in addition to mail, email and workplace posting sufficient to warrant the use of text messages in this case."); *Wright v. Waste Pro USA, Inc.*, 2020 WL 8641581, at *7 (S.D. Fla. Dec. 22, 2020) (denying notice by text message because "Plaintiff has not demonstrated a need to transmit the notice via text message in addition to notice via first class mail and email.") (citation and internal quotes omitted); *Gibbs v. MLK Express Services, LLC*, 2019 WL 1980123, at *17 (M.D. Fla. March 28, 2019) (denying use of text message because "Plaintiffs have provided no legitimate basis that justifies issuing notice via text message."), report and recommendation adopted in relevant part, 2019 WL 2635746, at *10 (M.D. Fla. June 27, 2019); *Cf. Campo v. Granite Services Intl., Inc.*, 584 F. Supp. 3d 1337, 1350–51 (N.D. Ga. 2022) (finding notice by email and text appropriate where putative collective members worked in remote locations and may be away from their homes for prolonged periods of time).

Here, unlike in *Campo*, no such justification exists. Plaintiffs have not provided (and cannot provide) any evidence that members of the Putative Collective are away from their address of record or in remote locations for so long that mailed and emailed notice (whether opened or not) are insufficient. Accordingly, Plaintiffs have failed to demonstrate that supplemental notice by text message is necessary or would be more effective than the notices already sent.

**2.    Distributing Notice by Text Message Intrudes on Individuals' Privacy Interests and Likely Engenders Confusion and Miscommunication About the Lawsuit.**

Disclosing the mobile phone numbers of the putative opt-in plaintiffs so they can receive an unsolicited text message about this lawsuit unnecessarily intrudes on the privacy interests of these individuals. Such an intrusion is unwarranted and the Court should avoid it here, especially when less intrusive and burdensome means have already notified potential opt-ins of the lawsuit. *See, e.g., Hammond v. Floor & Decor Outlets of Am., Inc.,* 2020 WL 6459641, at *19 (M.D. Tenn. Nov. 3, 2020) (finding distribution of notice through text message was "unnecessarily invasive" and "cumbersome"); *Foster v. Sitel Operating Corporation*, 2020 WL 3485576, at *6 (M.D. Tenn. May 22, 2020) (citing privacy interests of potential opt-ins, "[t]he Court will adhere to its prior practice and in its discretion will not order Defendant to produce the cell phone numbers of potential opt-in plaintiffs"); *Stephens v. Sopapillas, LLC*, 2019 WL 1460878, at *7 (M.D. Tenn. Apr. 2, 2019) (declining to order production of opt-in plaintiffs' phone numbers based on privacy concerns); *Anderson v. Minacs Grp. (USA) Inc.*, 2017 WL 1856276, at *9 (E.D. Mich. May 9, 2017) (prohibiting text notice as an "unnecessary intrusion upon the privacy of" putative opt-ins and that "the transmission of notice by text message could well be viewed by the recipients as harassing in nature").

18

Further, sending notice of a federal lawsuit to potential participants by a text message does not convey the important nature of the communication. *See Kiley v. MedFirst Consulting Healthcare Staffing, LLC*, 297 F. Supp. 3d 1260, 1268 (N.D. Ala. 2018) (denying plaintiffs' request to send notice by text message given the court's concerns that "a text message notice could be incomplete and might not convey the seriousness of the communication); *Aguirre v. Tastee Kreme #2, Inc.*, 2017 WL 2999271, at *10 (S.D. Tex. Apr. 13, 2017) (finding notice by text message presents risk that notice would be incomplete, fail to provide a full picture of the matter, and fail to convey the seriousness of communication), report and recommendation adopted in relevant part, 2017 WL 2350064 (S.D. Tex. May 31, 2017); *Anderson*, 2017 WL 1856276, at *9 (noting text message containing notice likely to be regarded by recipients as "spam").

Moreover, notice by text message substantially increases the likelihood that notice will go to the wrong person. Cell phone numbers are often reassigned, unlike physical and email addresses, which tend to be more stable and permanent.[9] Here, the risk of text messages not reaching the intended recipients is particularly high

---

[9] The Federal Communications Commission ("FCC") has recognized that mobile phone numbers are frequently reassigned. *See In the Matter of Advanced Methods to Target & Eliminate Unlawful Robocalls*, 32 F.C.C. Rcd. 6007 (2017) (the FCC explained that only a limited quantity of cell phone numbers are allocated to voice service providers, and "these providers routinely 'recycle' telephone numbers" and "100,000 numbers are reassigned by wireless carriers every day"). As a result, text communications are likely to fail to reach numerous potential opt-in plaintiffs.

because Defendant provides many of its employees with company cell phones and/or company cell phone numbers. When an individual's employment with the company ends, Defendant retains the company cell phone number and often reassigns it to a new employee. As such, text messages create a significant risk of distributing notice to incorrect recipients, engendering confusion, and accomplishing little more than promoting inefficiencies and threatening the integrity of the notice process.

Additionally, the risk of confusion – even for intended recipients – is heightened here considering the cumbersome format of the text communication proposed by Plaintiffs, i.e., a message with a link to a URL containing the actual notice and consent form (Dkt. No. 22-1, p. 15). *See Brandenburg v. Cousin Vinny's Pizza, LLC*, 2017 WL 3500411, at *5 (S.D. Ohio Aug. 15, 2017) ("Plaintiffs' proposed format for the text message – a message with a link to a URL containing the actual notice and Consent to Join form – is so cumbersome as to be invasive."). Moreover, as discussed more fully below, distribution of supplemental notice in this case (if any is permitted), should only be done in a manner that will not subject potential opt-in plaintiffs or any other individual to unwarranted contact or solicitation. *See Miller v. JAH, LLC*, 2018 WL 305819, at *3 (N.D. Ala. Jan. 5, 2018) ("[S]ending potential class members text messages will subject them to the annoyance of unsolicited text messages that Congress passed the Telephone Consumer Protection Act, in part, to address."); *Midgett v. Werner Enterprises, Inc.*,

2020 WL 6163019, at *4 (D. Neb. Oct. 13, 2020) (finding that notice by text message is "excessive and potentially invasive[.]"), report and recommendation adopted, 2020 WL 6779149 (D. Neb. Nov. 18, 2020); *Cowan v. Nationwide Mut. Ins. Co.*, 2019 WL 4667497, at *11 (S.D. Ohio Sept. 25, 2019) (warning that notice by text message risked "badgering" putative plaintiffs to join lawsuit).

Plaintiffs argue that notice by text message is proper because texting was purportedly the most common method by which they communicated with each other and their managers during their employment with Defendant. (Dkt. No. 22-1, p. 16). This argument misses the mark. Simply because Plaintiffs discussed work-related matters by text message, does not render text messaging an appropriate medium to communicate notice of a collective action. Likewise, simply because former employees of Defendant may have communicated by text message about work matters during their employment does not mean they now consent to receive text message communications about any other matter after their employment ended, let alone a detailed communication about a federal lawsuit.

### 3.    Notice by Text Message Potentially Violates Federal Law.

A further concern related to distribution of a supplemental notice by text message is that it likely violates the Telephone Consumer Protection Act ("TCPA"). The TCPA allows individuals to file lawsuits and collect damages for receiving certain unsolicited calls and text messages. 47 U.S.C. § 227(b)(3); *see* Rules and

Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 18 FCC Rcd 14014, 14115, ¶ 165 (2003) (hereinafter "2003 TCPA Rule") (statutory prohibition against calls to wireless numbers "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls").[10] Indeed, the FCC has explained that the TCPA prohibits sending informational text messages to cell phones, unless the sender has "prior express consent." 47 U.S.C. § 227(b)(1)(A); *see also* 2003 TCPA Rule at ¶ 165. As the FCC has stated, text messages must be made "within the scope of the consent given." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order, FCC 15-72 (rel. July 10, 2015). The fact that some individuals provided their telephone numbers to Defendant during their employment does not indicate consent to receive text messages from an unrelated third party. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1046 (9th Cir. 2017); In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1840 (Feb. 15, 2012). Given TCPA requirements, Defendant and the Administrator could face significant potential liability for a claimed violation of the TCPA if they are required to send supplemental notices by text. *See* 47 U.S.C. § 227(b)(3) (permitting recovery of

---

[10] "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

damages ranging from $500.00 to $1,500.00 for each unsolicited call/text message);

*see also Drazen v. Pinto*, 74 F.4th 1336, 1345 (11th Cir. 2023) ("[T]he receipt of an

unwanted text message causes a concrete injury . . . [that is sufficient] to bring a

claim under the TCPA."); *Miller*, 2018 WL 305819, at *3 ("[S]ending potential class

members text messages will subject them to the annoyance of unsolicited text

messages that Congress passed the Telephone Consumer Protection Act, in part, to

address."). Accordingly, given the scope of the collective, the lack of consent to

receive a text communication, and potential liability, distribution of notice by text

message should not be authorized.[11]

## C.    Plaintiffs' Counsel's Request for the Personal and Private Information of Members of the Putative Collective Should be Denied.

Plaintiffs' counsel's request to obtain the private contact information of

individuals who have not expressed any interest in speaking to or hiring him as their

lawyer, as well as to have unrestricted and unsupervised access to these

unrepresented individuals, runs afoul of not only the Parties agreement and the

Court's Amended Order, but also the applicable rules of professional conduct.

Specifically, the Georgia Rules of Professional Conduct prohibit the type of

---

[11] If the Court does authorize additional notice by text message (which it should not), only a link to the court approved notice should be provided in the text message with nothing further in the body of the message. If the Court permits further communication in the body of the message, Defendant respectfully requests that the Parties be required to jointly submit a proposed text message for Court approval.

unsolicited direct contact proposed by Plaintiffs' counsel. GA Rules of Professional Conduct, Rule 7.3(d) (prohibiting a lawyer from soliciting "professional employment as a private practitioner . . . through direct personal contact or live telephone contact with a nonlawyer who has not sought advice regarding employment of a lawyer."). Additionally, by directly contacting individuals who have already received notice by at least first-class mail and expressed no interest in joining this action, Plaintiffs' counsel seeks to interfere with the agreed upon notice process, would accomplish little more than stirring up litigation and risks creating the perception that these actions by Plaintiffs' counsel are court-endorsed. *See Zulauf*, 2011 WL 12677018, at *23; *Byard*, 287 F.R.D. at 373.

Further, legitimate data privacy and security concerns require that Plaintiffs' counsel not be permitted to receive any of the private information he now seeks. Rust Consulting was selected and agreed to by the Parties as the Administrator because it has been thoroughly vetted and has the infrastructure necessary to handle and protect sensitive, personal and private data. Plaintiffs' counsel, on the other hand, is a solo-practitioner and there is nothing to suggest he has the sophisticated privacy and data security capabilities to maintain and protect the private information he now seeks. Given the continued rise of law firm data breaches,[12] Plaintiffs'

---

[12] *See Law Firm Data Breaches Continue to Rise*, Xiumei Dong, LAW360, https://www.law360.com/pulse/articles/1573082/law-firm-data-breaches-continue-to-rise.

counsel should not be permitted to receive any information for the individuals who have not opted into this case.

## III.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Additional Notice of Action by Text Message to Putative Class Members. If some form of additional notice is approved, it should be limited to a second mailed notice to those former employees for whom emailed notice was sent to their former Cool Air email address.

Dated:      March 14, 2024            Respectfully submitted,

*/s/ Lisa A. Schreter*
Lisa A. Schreter, Bar No. 629852
lschreter@littler.com
Pierre-Joseph Noebes, Bar No. 537216
pnoebes@littler.com

LITTLER MENDELSON, P.C.
3424 Peachtree Road N.E., Suite 1200
Atlanta, GA  30326.1127
Telephone:  404.233.0330
Facsimile:   404.233.2361

Attorneys for Defendant
Cool Air Mechanical, LLC

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D, the undersigned hereby certifies that this pleading complies with the font requirements of Local Rule 5.1C because this document has been prepared in Times New Roman, 14-point type.

*/s/ Lisa A. Schreter*
Lisa A. Schreter
Georgia Bar No. 629852
Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JUSTIN HOWARD, CHRIS TAYLOR, BILLY MAYVILLE, SEAN BOWLING, individually and on behalf of all other similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> COOL AIR MECHANICAL, LLC, <br><br> *Defendant*. | Civil Action No. 1:23-cv-02725-SCJ |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 14, 2024, I electronically filed the foregoing

**DEFENDANT'S RESPONSE IN OPPOSITION TO NAMED PLAINTIFFS'**

**MOTION FOR ADDITIONAL NOTICE OF ACTION BY TEXT MESSAGE**

**TO PUTATIVE CLASS MEMBERS** with the Clerk of the Court using CM/ECF

system which will send notification of such filing to the following:

Dane Steffenson
DANE LAW, LLC
3575 Piedmont Rd., Suite L120
Atlanta, GA 30305
dane@thedanelawfirm.com

*/s/ Lisa A. Schreter*
Lisa A. Schreter
Attorney for Defendant

27
