IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JUSTIN HOWARD, CHRIS TAYLOR,
BILLY MAYVILLE, et al.,

    Plaintiffs,

v.

COOL AIR MECHANICAL, LLC,

    Defendant.

CIVIL ACTION FILE

No. 1:23-CV-02725-SCJ

**ORDER**

This matter appears before the Court on Named Plaintiffs' Motion for Additional Notice of Action by Text Message to Putative Class Members. Doc. No. [22].[1]

On November 20, 2023, based on the Parties' Stipulation (Doc. No. [14]), the Court granted Plaintiffs' Motion for Conditional Certification. Doc. No. [16].[2]

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers referenced are those imprinted by the Court's docketing software.

[2] The Order was amended to change the administrator retained to administer the process for notifying the 223 putative members of the Fair Labor Standards Act collective ("Putative Collective") of the right to join this lawsuit. Doc. No. [17].

The Parties agreed to distribute the notice of the right to join and the consent form to join the lawsuit ("Notice") to the Putative Collective by email and by first-class U.S. mail. Doc. No. [14], ¶ 5. In the event the Notice was returned as undeliverable, the Parties agreed that the administrator would perform "a skip trace and timely re-mail the notice one time." Id. To facilitate distribution of the Notice, the Court ordered Defendant to provide to the retained administrator "the names, last-known personal mailing addresses, and last-known personal email addresses (if available) of all members of the Putative Collective." Doc. No. [17], 5.

Based on the information provided by Defendant, the administrator timely mailed the Notice to all 223 members of the Putative Collective and  emailed the Notice to the 210 members for whom Defendant provided email addresses. Of the 223 mailed Notices, 17 Notices were returned as undeliverable, but the administrator re-mailed 7 of the initially undeliverable Notices after identifying new addresses by skip tracing.[3] Doc. No. [30-2], ¶ 15. Of the 210 emails sent, the

---

[3] Ten Notices remained undeliverable following the skip trace. Doc. No. [30-2], ¶ 15.

administrator received an "undeliverable bounceback" for 54.[4, 5] Ultimately, the Notice was distributed to 220 of the 223 members of the Putative Collective[6]—it was distributed by both U.S. mail and email to several of the members of the Putative Collective and distributed to the remaining members by either mail or email. Doc. Nos. [30-3], ¶ 10; [30], 9.

Through their Motion, Plaintiffs request that the Court allow for the distribution of the Notice by text message to those 123 members of the Putative Collective (1) for whom Defendant did not provide an email address (13 members); (2) whose Notice emails were returned as undeliverable (54 members); or (3) who did not open the Notice emails (56 members). Doc. No. [22-

---

[4] Of the 54 undeliverable emails, 41 were "rejected by Cool Air" (Doc. No. [22-4], 1), which indicated that those emails were sent to the Putative Collective members' Cool Air email addresses. Defendant asserts that to ensure that the administrator had "comprehensive" data, it provided the Cool Air email addresses of former employees for whom it did not have a personal email address. Doc. No. [30], 7–8. Thirty-four of the 41 rejected Cool Air emails were to former employees. According to Plaintiffs, Defendant has failed to share the reason why the other 7 emails could not be delivered. Doc. No. [22-1], 7. As to the 34 undelivered emailed Notices to former employees, Defendant offered to send them a second Notice by U.S. mail (Doc. No. [30-3], ¶¶ 5–6), but Plaintiffs rejected that offer. Id. at Ex. A.

[5] The administrator did not attempt to identify a current email address for the members of the Putative Collective from whom the Notice email was returned as undeliverable. Thus, the undeliverable emails were not resent.

[6] Neither a valid email address nor a current mailing address was available for the 3 members to whom the Notice was not distributed. Doc. No. [30-3], ¶ 10.

1], 2–3. Plaintiffs contend that the distribution of the Notices by email has been ineffective and argue that because Defendant communicated with its employees via text messages, text messaging is a preferable means of reaching the 123 members of the Putative Collective.

Defendant argues that the distribution of the Notice by additional means is not warranted as Plaintiffs have failed to show that the notice process was ineffective. Doc. No. [30], 9–15. It also contends that the distribution of the Notice by text message raises privacy concerns and may violate federal law. Id. 18–25. Plaintiffs reply that postal mail alone is not sufficient in this modern age if the intent it to provide notice of this litigation to all putative members. Doc. No. [31], 2. They also argue that distribution of the Notice by additional means is necessary because Defendant's failure rendered the initial notice process ineffective— Defendant failed to provide email addresses for some employees and the administrator Defendant retained failed to perform a skip trace to find a valid email address for the 54 undeliverable emails. Doc. No. [31], 2–3. Plaintiffs maintain that because there is no evidence to determine whether the mailed Notices were in fact delivered to the intended recipients and because more than 50% of the Putative Collective (123 members) either did not receive or open the

4

emailed Notice, the Court should allow the re-distribution of the Notice by text message to 123 members of the Putative Collective. Doc. No. [31], 7.

The goal of the court-managed opt-in process is to ensure that putative class members "receiv[e] accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989). Plaintiffs do not contend that the Notice was either inaccurate or untimely. Rather, they challenge its effectiveness because 123 members of the Putative Collective either did not receive or received but did not open the emailed Notice. Plaintiffs' argument fails.

First, the Notice was distributed to 213 members of the Putative Collective by U.S. Mail, and Plaintiffs' effort to downplay that successful distribution is unavailing. The fact is that 213 Notices were mailed to either the addresses Defendant had available for the identified members of the Putative Collective or (for undeliverable mail) the addresses that were identified following a skip trace. Neither Defendant nor the administrator was required to do more to ensure effective distribution. And the reasonable presumption is that the Notice was

5

received by the intended recipient as it was mailed to that recipient's last known personal mailing address.

Second, Plaintiffs cite no binding authority for the proposition that the class action notice is required to be sent by multiple means to be effective. And although the Parties here agreed (and the Court approved) the distribution of the Notice by a second means (email), nothing in the Parties' Stipulation nor the Court's Order tied effectiveness of the notice process to the distribution (much less receipt) of the Notice by **both** of the selected means to all members of the Putative Collective.[7] Indeed, to facilitate the emailing of the Notices, Defendant was required to provide the last known personal email addresses for the members of the Putative Collective only if they were available to Defendant. Thus, where Defendant did not have a personal email address available for a member, the Parties' Stipulation tacitly contemplated that no emailed notice would be provided.

---

[7] If the number of undelivered or unopened emails exceeded 15%, Plaintiffs reserved the right to file a motion to obtain the contact information (including cell phone numbers) if the Parties were unable to resolve "an alleged deficiency of ensure notice to those individuals." Doc. No. [14], ¶ 6. However, that reservation is not an acknowledgment (as Plaintiffs contend) by Defendant of the ineffectiveness of the notice process in the event that greater than 15% of the emails were undelivered or unopened.

In this case, where Defendant did not have a personal email address available, it provided the business email address (i.e., the member's Cool Air email address). This resulted in bouncebacks from the terminated Cool Air email addresses of 34 of Defendant's former employees. Plaintiffs contend that this shows that Defendant knowingly provided invalid emails.[8] The Court, however, disagrees. For those former employees for whom Defendant did not have last known **personal** email addresses, Defendant was not required to provide any email addresses, but instead of providing no addresses, Defendant elected to provide the last know **business** email addresses it had. As could be anticipated, the Notices emailed to those terminated addresses were returned as undeliverable; had Defendant not provided any email addresses, the Notices would not have been emailed at all. The result was the same—those former

---

[8] One of Defendant's former employees, Plaintiff Sean Bowling asserts that although Defendant used his terminated Cool Air email address for the purposes of emailing him the Notice, he had provided Defendant with his personal email address. Doc. No. 22-5, ¶¶ 3–4. However, Mr. Bowling does not assert when he gave Defendant his personal email address or indicate that Defendant continued to maintain that address in its records. Accordingly, to the extent Plaintiffs seek to rely on Mr. Bowling's statement as indicating that Defendant failed to provide personal email addresses that were available to it, this effort fails.

employees for whom Defendant had no current personal email addresses did not receive the Notice by email. [9]

Finally, the fact that 56 members of the Putative Collective did not open the emailed Notices does not render the notice process ineffective. The Notices reached the intended email accounts. The effectiveness of the notice process does not turn on whether the recipients opened and reviewed the emailed Notices (or indeed the mailed Notices)—that choice rests strictly with the recipients.

Under the circumstances, the Court is persuaded that the "best notice practicable was furnished" where Defendant acted in accordance with the Parties' Stipulation and the Court's Order by providing a list with the names, last known personal mailing addresses, and last known personal email addresses (if available) of all members of the Putative Collective, the administrator timely distributed the Notices by mail and email, and performed a skip trace of the undelivered mailed Notices to re-mail the Notices to those members for whom

---

[9] The Parties' Stipulation did not require, as Plaintiffs contend, the administrator to perform a skip trace of undeliverable **emails** to find a current personal email address. The Parties' Stipulation specifies that the administrator was to perform a skip trace and "re-mail" an undeliverable Notice. Doc. No. [14], ¶ 5(c). Reasonably read, especially where the Parties diligently distinguish between sending the Notice by "mail" and by "email," the term "re-mail" refers to sending by post (i.e., mail) rather than email.

new addresses were identified. <u>George v. Acad. Mortg. Corp. (UT)</u>, 369 F. Supp. 3d 1356, 1368 (N.D. Ga. 2019). In <u>George</u>, the court presumed the successful delivery of the mailed notice (and the receipt of the concurrent emailed notices) to all potential members of the class action. <u>Id.</u> Here, 3 members of the 223 members of the Putative Collective did not receive the Notice by either mail or email and 64 additional members did not receive the Notice by email. Nevertheless, there is nothing to indicate that the Notice was not successfully delivered to 99% of the Putative Collective (220 out of the 223 members) by either mail or email.[10]

---

[10] Plaintiffs submit the declaration of Scott Kidd, Defendant's former employee, who desires to opt-in to this lawsuit but did not receive the Notice through mail or email. Doc. No. [32-1], ¶¶ 3–4.. Mr. Kidd advocates for the sending of the Notice via text message. <u>Id.</u> ¶¶ 10–14. Assuming Mr. Kidd was identified as a member of the Putative Collective and sent the Notice by mail and email, Mr. Kidd's declaration provides no explanation for his claim of lack of receipt of the Notice. If he received the Notice (either by mail or email or by both means) but failed to open and review it, that does not equate to lack of receipt. Plaintiffs appear to argue that Mr. Kidd did not receive the mailed Notice because "he moved from the address where he resided while working for Defendant." Doc. No. [32], 1. However, it is unclear whether Mr. Kidd had a correct forwarding address to which the Notice was in fact rerouted; whether the mailed Notice was returned as undeliverable and re-issued following a skip trace; or whether he was one of the 10 individuals for whom the skip trace process proved unsuccessful. Plaintiffs also offer no explanation for why Mr. Kidd claims not to have received the emailed Notice (assuming one was emailed to him). In short, Mr. Kidd's declaration and Plaintiffs' contention raises more questions than it answers.

For the foregoing reasons, Named Plaintiffs' Motion for Additional Notice of Action by Text Message to Putative Class Members (Doc. No. [22]) is **DENIED**.

**IT IS SO ORDERED** this __2 9th__ day of April, 2024.

HONORABLE STEVE C. JONES
**UNITED STATES DISTRICT JUDGE**

10