**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **JUSTIN HOWARD, CHRIS TAYLOR,** ) | |
| **BILLY MAYVILLE, SEAN BOWLING**, ) | |
| Individually, and on behalf of all others ) | |
| similarly situated, ) | |
| ) | |
| Plaintiffs, ) | Case No. |
| ) | 23-cv-02725-SCJ |
| v. ) | **Jury Trial Demanded** |
| ) | |
| **COOL AIR MECHANICAL, LLC,** ) | |
| ) | |
| Defendant. ) | |

### PLAINTIFFS' SECOND UNOPPOSED MOTION FOR STIPULATED JUDGMENT AND ORDER APPROVING JOINT STIPULATION OF COLLECTIVE ACTION SETTLEMENT AND RELEASE WITH INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Named Plaintiffs Justin Howard, Chris Taylor, Billy Mayville, and Sean Bowling ("Named Plaintiffs"), and Opt-In Plaintiffs Barry McGowan, Brandan Smith, Brian Cook, Brittany Jefferson, Douglass Stewart, Eric Lott, Erick Pippins, Joel Kuolas, Keion Hylton, Klayton Sproles, Marvin Cooper, Marvin Picon, Matthew Martin, Michael Pharr, Phillip Brantley, Raymond Massey, Scott Kidd, Stanislav Stankov, Stephen Ford, and Valencia Williams ("Opt-In Plaintiffs") (collectively referred to as "Plaintiffs" or "Class Members"), by and through their undersigned counsel, respectfully move the Court to (1) approve the revised Joint

Stipulation of Collective Action Settlement and Release of Claims[1] (the "Agreement"), in accordance with applicable law, (2) grant Final Judgment on the Released Claims, (3) find the terms of the proposed Settlement to be fair, reasonable, and adequate, (4) approve Plaintiffs' Counsel's application for an award of Plaintiff's Counsel's Fees, Costs, and Expenses, (5) dismiss this matter with prejudice permanently enjoining all members of the FLSA Settlement Collective from prosecuting any Released Claims against Defendant and the Released Persons, (6) appoint Rust Consulting, Inc. as the Settlement Administrator, and (7) retain jurisdiction over this matter to enforce the Agreement.

The Agreement arises out of an adversarial action under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* (the "FLSA"), that also alleges breach of contract claims for the Named Plaintiffs and retaliation claims for Named Plaintiffs Justin Howard and Chris Taylor. Because certain of Plaintiffs' claims arise under the FLSA, the Agreement must be approved by the Court and such approval must be entered as a stipulated final judgment. The Parties agree that the Agreement constitutes a fair, adequate, and reasonable resolution of their *bona fide* disputes. Therefore, Plaintiffs submit the Agreement,[2] attached as Exhibit A, for

---

[1] Consistent with this Court's Order [Dkt. 79], the Parties have revised their Settlement Agreement and removed the confidentiality provision that was previously found at Section VII.B. Otherwise, the Settlement Agreement is unchanged.
[2] Capitalized terms in this motion have the same definition as set forth in the Agreement.

the Court's approval. A Proposed Stipulated Judgment and Order is also attached as Exhibit B.

To avoid the risks and uncertainty as well as the costs of protracted litigation, the Parties desire to fully and finally resolve this action with prejudice as to all counts, claims, and parties. In further support, Plaintiffs state as follows:

## I.    BACKGROUND

Defendant Cool Air Mechanical, LLC ("Defendant") provides residential and commercial cooling, heating and plumbing service, repair, maintenance, and installations throughout the Atlanta metropolitan area. Named Plaintiffs Howard, Taylor, Mayville, and Bowling, all of whom are former employees of Defendant, filed this collective action and their consent to join forms on June 17, 2023. (Dkt. Nos. 1, 1-1, 1-2, 1-3, and 1-4). Named Plaintiffs allege, on behalf of themselves and all others similarly situated, that Defendant willfully violated the FLSA by failing to: (1) pay them for all hours worked including drive time, attendance at mandatory meetings and trainings, work performed at Defendant's facility, and on-duty meal periods; (2) compensate them for all federally mandated overtime; and (3) pay them all commissions due. Named Plaintiffs also allege individual claims for breach of contract in violation of Georgia law, and individual claims of wage-related retaliation under the FLSA by Named Plaintiffs Howard and Taylor. Plaintiffs seek unpaid compensation incurred during their employment and commissions for a

three-year period, plus attorneys' fees, costs and expenses. Additionally, Named Plaintiffs Howard and Taylor seek additional damages for Defendant's alleged retaliation.

Defendant answered the Complaint on August 28, 2023 (Dkt. No. 8) and filed its Amended Answer on September 18, 2023 (Dkt. No. 11). Defendant denies each of Plaintiffs' allegations above and asserts that Plaintiffs and those similarly situated were paid in compliance with all of its obligations, including under the FLSA, and that it did not retaliate against Named Plaintiffs Howard and Taylor.

On October 4, 2023, the Parties filed a Joint Stipulation regarding conditional certification pursuant to 29 U.S.C. § 216(b) for notice purposes only. (Dkt. No. 14). The Parties defined the relevant "FLSA Collective" as:

> All persons who work/worked for Cool Air Mechanical, LLC as Plumbers, HVAC Technicians, or HVAC Installers providing cooling, heating, or plumbing repair and/or installation services who were allegedly not paid an overtime premium or correct overtime premium for hours worked over 40 in a workweek, and/or were allegedly not paid for all hours worked during the period of June 17, 2020, to June 17, 2023.

*Id*. On November 20, 2023, the Court entered an order approving the Parties' stipulation. (Dkt. No. 16). On November 21, 2023, the Court entered an amended order approving the Parties' stipulation and the appointment of Rust Consulting as the Notice Administrator. (Dkt. No. 17). Twenty (20) former employees comprised

of plumbers, HVAC Technicians, and HVAC Installers opted into the case. (Dkt. Nos. 18, 19, 20, 21, 23, 28, 29, 34).

### B.      Mediation Process

The Parties sought to mediate their *bona fide* disputes with the assistance of a Magistrate Judge in advance of either party filing motions to compel to complete written discovery and depositions. (Dkt. No. 51, ¶ 4). On October 15, 2024, the Court granted the Parties Joint Motion to Stay and referred the matter for mediation. (Dkt. No. 52).

In preparation for mediation with Magistrate Judge Linda T. Walker, Plaintiffs reviewed and conducted a detailed analysis of the records it received from Defendant for each Plaintiff. Utilizing the provided time, GPS, pay and other data, Plaintiffs' Counsel calculated the damages owed to each Plaintiff, which was provided to Defendant along with a detailed explanation as to the information and assumptions used in formulating the damages. Based on Plaintiffs' calculations at the time of mediation, if all of Plaintiffs' allegations were proven, Plaintiffs claim the total amount allegedly owed to the 24 Plaintiffs would be approximately $441,042 in unpaid minimum and overtime wages and up to $204,527 in unpaid commissions for the three-year time period beginning June 17, 2020, through June 17, 2023. Plaintiffs could also be entitled to liquidated damages under the FLSA. *See* 29 U.S.C.

§ 216(b). Further, Named Plaintiffs Howard and Taylor claim damages for Defendant's alleged retaliation.

In response, Defendant vigorously disputes that Plaintiffs were not compensated for all hours worked and further disputes the alleged number of off-the-clock hours and that there were any unpaid commissions. Moreover, Defendant disputes that it engaged in any willful violation of the FLSA and takes the position that Plaintiffs' damages should be limited to two rather than three years, which would eliminate the majority of the damages as a large portion of the calculated damages are from the third year. Similarly, Defendant contends that if a violation occurred, Defendant's conduct was taken in good faith such that liquidated damages are not appropriate. In connection with mediation, Defendant prepared its own estimate of potential damages, and that estimate supports significantly lower back wages than claimed by Plaintiffs, if any.

### C.    Settlement Reached by the Parties

After almost two years of combined negotiations and litigation, the Parties were able to resolve the matter during a full day of mediation with Magistrate Judge Walker on June 10, 2025. (Dkt. No. 77). During the mediation process, the Parties engaged in settlement discussions based upon their independent valuations of the case. All Parties were counseled and represented by their respective attorneys throughout the litigation and settlement process. Through their attorneys, the Parties

voluntarily agreed to the terms of the proposed settlement during negotiations which reflects a reasonable compromise of the *bona fide* disputed issues. *See* Exhibit A.

As agreed by the Parties, the settlement is comprised of a Maximum Gross Settlement Amount that compensates Plaintiffs for alleged claims for back wages, commissions, and retaliation claims by Howard and Taylor, and includes General Release Payments[3] for Named Plaintiffs Howard, Taylor, Mayville, and Bowling, and Opt-In Plaintiff Brian Cook who is the Named Plaintiff in the Georgia State Court action, *Brian Cook v. Cool Air Mechanical, LLC*, Civil Action No. 24-C-05297-S7 (the "Georgia State Court Action"), and includes payment for attorney fees, costs and expenses. If this settlement is approved, both this case and the above referenced Georgia State Court Action will be dismissed with prejudice.

Under the Agreement, Defendant has agreed to pay a Maximum Gross Settlement Amount of $900,000.00, of which, after attorneys' fees, costs, and expenses and the proposed General Release Payments, a Revised Maximum Gross

---

[3] Under the proposed settlement, the four Named Plaintiffs, as well as Opt-In Plaintiff Brian Cook – who is the Named Plaintiff in the Georgia State Court action, *Brian Cook v. Cool Air Mechanical, LLC*, Civil Action No. 24-C-05297-S7 – would receive a $4,000.00 General Release Payment from the Maximum Gross Settlement Amount. This General Release Payment is consideration for the general release of claims agreed to by the Named Plaintiffs and Opt-In Plaintiff Cook, and is appropriate in FLSA collective action settlements. *See, e.g., Martinez v. Woodvalley Landscape*, 2021 U.S. Dist. LEXIS 30908, at *5 n.1 (N.D. Ga. Feb. 17, 2021); *Evans v. Simply Storage Mgmt., LLC*, No. 1:19-cv-03355-CAP-LTW [Dkt. No. 49] (N.D. Ga. Nov. 23, 2020).

Settlement Amount of $549,766.00 for back wages and $60,000 to resolve retaliation claims will be eligible for and distributed to Plaintiffs. As a result, by Plaintiffs' calculations, Plaintiffs are eligible to receive a gross amount that is approximately 50% of all alleged unpaid wages and commissions under their "best case scenario" using the three-year statute of limitations, $30,000 each to Howard and Taylor for their individual retaliation claims, and full liquidated damages on the back wages being received.[4] The amount allocated to each Plaintiff is the amount of alleged back wages owed based on the individual's: (a) employment dates, (b) number of total hours worked while employed with Defendant, (c) hourly or piece rate, and (4) estimated number of off-the-clock hours allegedly worked, as estimated by Plaintiffs based on Defendant's pay, GPS, time and related records and recollection of each Plaintiff. Approximately thirty percent (30%) of the Maximum Gross Settlement Amount is allocated to attorneys' fees, costs, and expenses, which represents less than seventy-five percent (75%) of Plaintiffs' Counsel's actual fees.

Separately, and in addition to the $900,000 Maximum Gross Settlement Amount, Defendant will pay all employer-side payroll taxes and required withholdings on the wage payments made, as well as the costs associated with

---

[4] The distribution proposes paying Plaintiffs 100% of alleged back wages divided 50% as back wages and 50% as liquidated damages, and $108,748 of the $204,527 calculated as unpaid commissions in addition to money being paid to resolve retaliation claims and obtain general releases.

settlement administration. The Maximum Gross Settlement Amount and payments will be administered by a third-party claims administrator. Pursuant to the Agreement, Defendant will transmit funds to the claims administrator for distribution to all Plaintiffs.

Plaintiffs believe that the terms and conditions of the proposed settlement set forth in the Agreement are fair, adequate, reasonable, and in the best interest of the Plaintiffs. The Parties have entered into the Agreement because it reflects a reasonable compromise of the Parties' *bona fide* disputes and actual or potential claims. In addition, the Plaintiffs believe that the certainty of settlement now is better than the uncertain outcome and significant expense of protracted litigation.

## II.    **APPLICABLE AUTHORITY**

In the Eleventh Circuit, there are two ways in which claims under the FLSA may be settled, compromised, or released by an employee. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982) (holding claims for back wages arising under the FLSA may be settled or compromised only with approval of the Secretary of Labor or the court). The first, which has no application in the instant case, permits resolution of claims under the supervision of the United States Department of Labor. *See* 29 U.S.C. § 216(c); *Lynn's Food Stores*, 679 F.2d at 1353. The second, which does apply in the instant case, permits judicial approval of disputed claims on terms that amount to a "fair and reasonable [resolution] of a bona

fide dispute." *Id*. at 1354-55 ("When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."). Accordingly, Plaintiffs are submitting a copy of the Agreement for the Court's review and approval.

## III.  **ARGUMENT**

### A.  **The Agreement Constitutes a Fair, Adequate, and Reasonable Resolution of the Parties' *Bona Fide* Dispute.**

Following good faith, arms-length negotiations the Parties have reached a settlement of the FLSA and other claims against Defendant. This negotiated settlement resolves a number of *bona fide* disputes of law and fact including but not limited to whether: (1) Defendant failed to fully compensate Plaintiffs in violation of the FLSA; (2) Defendant failed to fully compensate Named Plaintiffs in a manner consistent with their individual offers of employment; (3) the FLSA Settlement Collective members worked the number of overtime hours alleged; (4) the FLSA Settlement Collective members worked any alleged off-the-clock hours; (5) Defendant retaliated against Named Plaintiffs Howard and Taylor for engaging in protected activity in violation of the FLSA; (6) Plaintiffs are entitled to liquidated damages under the FLSA; (7) a two or three year statute of limitations applies to Plaintiffs' FLSA claims; (8) Plaintiffs are entitled to damages; (9) any of Plaintiffs' claims are barred or limited by any of the Defendant's defenses or affirmative

10

defenses; and (10) Plaintiffs' conditionally certified FLSA collective should be decertified.

In addressing the circumstances justifying court approval of FLSA settlements in the litigation context, the Eleventh Circuit has stated:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the District Court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354.

In determining whether a settlement is fair, adequate, and reasonable, courts sometimes examine the factors used in approving the settlement of class actions under Rule 23 of the Federal Rules of Civil Procedure:

> (1) the existence of collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiff's success on the merits;
> (5) the range of possible recovery; and

11

(6) the opinions of counsel.

*See Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *King v. My Online Neighborhood*, 2007 WL 737575, *3 (M.D. Fla. 2007). "When considering these factors, the Court should keep in mind the 'strong presumption' in favor of finding a settlement fair. *King*, 2007 WL 737575 at *3 (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that Eleventh Circuit Court of Appeal "favor[s] and encourage[s] settlement in order to conserve judicial resources."). Finally, where attorneys' fees, costs, and expenses are agreed upon separately, without regard to the amount paid to a plaintiff-employee, it further supports approval of reasonable disputes. *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

As set forth below, an examination of each of these factors shows that the terms of the Agreement are fair, adequate, and reasonable, and should be approved by the Court.

    1.    The Agreement was not a product of collusion.

At all times, Plaintiffs and Defendant have been represented by counsel experienced[5] in the litigation of wage and hour claims. In preparation for mediation,

---

[5] *See, e.g., Lunsford v. Woodforest Nat'l Bank*, 2014 U.S. Dist. LEXIS 200716, at *20 (N.D. Ga. May 19, 2014) ("In evaluating the quality of representation by Class Counsel, the Court should also consider the quality of opposing counsel. [Cit.]

Plaintiffs' counsel made a thorough, and painstaking, assessment of the potential damages in this action based on the records produced by Defendant. The Parties engaged in lengthy and continued settlement negotiations being made aware of all potential outcomes before ultimately reaching an agreement to settle the case. That the case settled with the assistance of experienced Magistrate Judge Walker only after a full day's mediation further demonstrates the absence of collusion. *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1369-70 (N.D. Ga. 2019) ("The parties settled this Action by mediation with an experienced mediator[], which further confirms that the process was procedurally sound and not collusive."). Thus, the proposed settlement in this case is the ultimate result of arms-length negotiations of the Parties to which all Named Plaintiffs and the Defendant and their counsel accepted as a fair, adequate, and reasonable resolution of the claims involved.

Under the terms of the settlement (if approved), the amount allocated to the Plaintiffs, after the distribution of payments to Named Plaintiffs Howard and Taylor

---

Throughout the litigation, [defendant] was represented by extremely capable counsel. They were worthy, highly competent and professional adversaries.") (*citing In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1348 (S.D. Fla. 2011) (finding "Class Counsel confronted [combined defendants], and with them a large contingent of some of the largest and most sophisticated law firms in the country") and *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results")) (internal quotation marks and citation omitted).

for their individual retaliation claims, General Release Payments, and attorneys' fees, costs, and expenses, is a Revised Gross Settlement Amount of $549,766.00.

Defendant denies any liability under the FLSA or state law and denies that Plaintiffs are entitled to any recovery in this lawsuit; however, without admitting liability and solely for the purposes of avoiding ongoing costs of litigation, Defendant has agreed to make settlement payments to Plaintiffs as reflected in the Agreement. In exchange for those settlement payments, Plaintiffs will provide Defendant with a release covering wage and hour claims. *See* Exhibit A, Section VI(A). As it relates to Named Plaintiffs and Opt-In Plaintiff Cook, if the settlement is approved, they will receive an additional payment of up to $4,000 each in consideration for the further general release of claims. *See id.*, Section VI(B).

2. <u>The complexity, expense, and likely duration of the litigation</u>.

The proposed settlement allows Plaintiffs to take a substantial recovery now, without suffering the delay and risk of litigating the claims, damages, defenses, or an appeal. In this case, further litigation would be time-consuming and extremely expensive with over 30 additional depositions set, motions to compel discovery, a motion to decertify the collective, summary judgment motions, motions in limine, and a lengthy jury trial. Material areas of dispute would include whether the continued certification of an FLSA collective is appropriate in this action, whether Plaintiffs could make the showing of willfulness to justify the three-year statute of

14

limitations, whether Defendant could demonstrate good faith to defeat claims for liquidated damages, the number of allegedly uncompensated hours worked, and the alleged commissions earned by Plaintiffs. Attorneys' fees, costs, and expenses in this case would only have continued to exponentially increase for both sides if the case had not settled with Plaintiffs facing uncertainty as to the amount they would ultimately receive (if any) and more significantly when they might receive allegedly unpaid wages.

Moreover, to have any chance of recovery apart from this proposed settlement, Plaintiffs would have to incur additional losses by taking time off work to prepare for and attend depositions, respond to discovery and, presumably, prepare for and attend trial. Given the substantial investment of time and resources both Parties would need to contribute to continue litigating this case and the serious *bona fide* disputes over a variety of issues, Plaintiffs believe that the Parties' Agreement reflects a fair, adequate, and reasonable compromise of the issues and a favorable result for Plaintiffs.

3.    <u>The stage of the proceedings and the amount of discovery completed</u>.

This factor considers whether the parties have had the opportunity to fully evaluate the claims. *Carnegie v. Mut. Sav. Life Ins. Co.*, 2004 WL 3715446, *19 (N.D. Ala. Nov. 23, 2004); *see Meyer v. Citizens and Southern Nat. Bank*, 677 F. Supp. 1196, 1209-10 (M.D. Ga. Jan. 21, 1988). Plaintiffs obtained ample data and

documentation in advance of mediation which, coupled with Plaintiffs' Counsel's experience litigating similar claims and input from all twenty-four Plaintiffs, allowed Plaintiffs to make a reasoned analysis of the claims, damages, and likely litigation outcomes. *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1370-72 (N.D. Ga. 2019) ("[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations…. Class Counsel are familiar with the legal issues and likely defenses of employers on these [FLSA wage] issues through litigating similar cases challenging the [same pay method].") (citations and quotations omitted).

In this case, the Parties exchanged material data and documents related to Plaintiffs' claims and allegations. Defendant provided relevant pay and time information sufficient to permit Plaintiffs and their counsel to create a damage estimate prior to Plaintiffs making any settlement offer. Plaintiffs' Counsel analyzed the data in great detail and Defendant's time and pay records, along with Plaintiffs' input about those records and recollection of alleged time worked and commissions, provided the basis for all subsequent negotiations. Consequently, the Parties have had sufficient information upon which to assess the potential merits of the case, liability and damages, and the risks attendant to continued litigation. If the Parties continued to litigate this matter, they would be forced to engage in further costly

16

discovery, motion practice, and a potential trial in order to prove their claims and defenses.

4. The probability of Plaintiffs' success on the merits.

The probability of success on the merits also militates in favor of this settlement. While Plaintiffs believe they would prevail on the merits if this case were to proceed, Defendant has denied that it engaged in any wrongdoing or violation of law and has asserted the "good faith" defense to liquidated damages under 29 U.S.C. § 260. To prove entitlement to liquidated damages, Plaintiffs would have to defeat Defendant's showing of good faith. This settlement represents a compromise with respect to the amount of alleged damages and the issue of "good faith" as Defendant would vigorously contest all of Plaintiffs' allegations if this case was litigated further, including the continued certification of the FLSA collective, willfulness, and the damages alleged.[6] Further, if the case were to proceed, discovery may have established that Plaintiffs were entitled to recover substantially less or nothing at all.

---

[6] Though Defendant would, in the course of litigation, vigorously oppose the merits of Plaintiffs' claims and oppose the continued certification of any collective under Section 216(b) of the FLSA, it does not oppose the instant motion for approval of the proposed settlement or the continued certification of the proposed FLSA Settlement Collective for settlement purposes only. To the extent that the Court does not grant approval of the proposed Settlement, Defendant reserves the right to raise any argument with respect to the merits of Plaintiffs' claims or the appropriateness of the certification of any FLSA collective that it might have otherwise undertaken in litigation, or to make arguments that are contrary to the positions taken by Plaintiffs in this memorandum.

17

Accordingly, the Agreement is a fair, adequate, and reasonable means for both Parties to minimize future risks and litigation costs while providing Plaintiffs a substantial certain recovery now.

5.    The range of possible recovery.

"[T]here is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion…." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

As summarized above, Defendant disputes that Plaintiffs would be entitled to any damages in this action, and the Parties dispute the amount of damages to which Plaintiffs might be entitled, which would be governed by the presence or absence of willfulness, good faith as to liquidated damages, and unpaid hours worked and commissions earned (if any). Based on Defendant's records, and Plaintiffs' calculations, if Plaintiffs prevailed on every claim at trial (likely more than a year from now), and defeated Defendant's defenses, the maximum recovery to Plaintiffs based on alleged unpaid wages (without liquidated damages) would be approximately $441,042 and $204,527 in unpaid commissions[7] for a three-year

---

[7] This amount further permits Opt-In Plaintiffs to recover unpaid commissions which they would not otherwise be entitled to recover in this matter. A global settlement of this matter and the Georgia State Action following this Court not permitting a Rule 23 class allows the Opt-In Plaintiffs to resolve the Georgia State Action without

statute of limitations period. Plaintiffs could also seek attorneys' fees, costs, and expenses on top of this amount. The Maximum Gross Settlement Amount of $900,000 agreed to by the Parties and that would be made available now to Plaintiffs without years of litigation could pay approximately 50% of all alleged unpaid wages and commissions, full liquidated damages on the back wages received, alleged retaliation damages, after attorneys' fees, costs, and expenses and General Release Payments, which Plaintiffs believe is a good result for Plaintiffs.

6.    Plaintiffs' Counsels' Opinions.

Based on what Plaintiffs learned through formal discovery and analysis of Defendant's records, Plaintiffs' Counsel believes the Parties negotiated a fair, adequate, and reasonable settlement for all Plaintiffs. By settling, Plaintiffs avoid: challenges to the merits of Plaintiffs' claims and to the continued certification of the FLSA collective; substantial and indefinite delay in any potential payment involved in having to wait for trial and any appeals; potential adverse determinations on the statute of limitations and liquidated damages issues; and potential issues with judgment collection following years of expensive litigation. Therefore, Plaintiffs' Counsel recommends approval of this Agreement and represents that the proposed settlement is fair, beneficial, and equitably allocated among Plaintiffs. All Named

---

additional lengthy litigation and to recover alleged unpaid commissions in settlement.

Plaintiffs have considered the proposed settlement and also agreed that it is in their best interest and the best interest of all Plaintiffs.

### B.    Approval of Payment of Attorneys' Fees, Costs, and Expenses

The Agreement provides that Plaintiffs' attorneys' fees, costs, and expenses shall be paid from the Maximum Gross Settlement Amount in the total amount of $270,234, if approved by the Court. Plaintiffs request that the Court approve this payment of attorneys' fees, costs, and expenses, which Defendant does not oppose for settlement purposes only.

The FLSA requires that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Fee awards are mandatory for prevailing plaintiffs in FLSA cases. *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985). A party is a "prevailing party" for purposes of an attorneys' fee award if the party "succeeded on any significant claim affording it some of the relief sought." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989).

The reasonableness of attorney's fees from settlement of FLSA collective actions by creation of a common fund for payment of all claims, fees, and costs, is determined under the common fund analysis. *Martinez v. Woodvalley Landscape*, 2021 U.S. Dist. LEXIS 30908, at *4 (N.D. Ga. Feb. 17, 2021) (holding, in approving

claims-made FLSA collective action settlement requiring participants to opt-in to claims from the fund, "[a]n award of attorneys' fees and costs as a percentage of the common fund is acceptable in these circumstances and is justified here."); *Kreher v. City of Atlanta*, 2008 U.S. Dist. LEXIS 138404, at \*15 n.11 (N.D. Ga. Sep. 30, 2008) (holding, in approving settlement covering FLSA collective, that "the common fund analysis is the appropriate application and that 32.13% of settlement was fair and reasonable in accordance with the FLSA."). Under Eleventh Circuit precedent, "attorney's fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n v. Dunkle*, 946 F2d 768, 774 (11th Cir. 1991); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1297-98 (11th Cir. 1999). Plaintiffs' Counsel took this case on a contingency basis, which provides for the payment of attorneys' fees in the amount of 40% of any settlement, but Plaintiffs' Counsel has agreed to reduce that percentage to 30% (inclusive of costs and expenses) to increase the recovery to FLSA Settlement Collective members. Declaration of Dane Steffenson at ¶ 18. Because of this contingency fee arrangement, Plaintiffs' Counsel has worked more than two years without being paid for any attorney or paralegal time spent prosecuting this case nor received reimbursement for out-of-pocket costs Plaintiffs' Counsel has fronted to achieve this result. Steffenson Decl. at ¶ 19. Plaintiffs' Counsel undertook the financial risk of potentially unsuccessful litigation, and

21

potentially no payment of Plaintiffs' attorneys' fees and costs, in an effort to recover unpaid wages for workers they believe were not paid correctly. Steffenson Decl. at ¶ 19. Plaintiffs' Counsel predominately represents non-contingent clients who pay a retainer and 95% replenish their retainers monthly with current firm clients paying Dane Steffenson up to $680 per hour. Steffenson Decl. at ¶ 16. Similarly, Plaintiffs' Counsel Kristina Brooks regularly bills and collects $495 to $550 per hour; firm paralegals regularly bill and collect $185 per hour. Steffenson Decl. at ¶ 16. Hours in this case have been billed at $650 for Dane Steffenson, $550 for Kristina Brooks, and $155 for paralegals. Steffenson Decl. at ¶ 16. Plaintiffs' Counsel has expended approximately 750 hours preparing and prosecuting the case to achieve this Settlement for Plaintiffs with billed fees exceeding $375,000. Steffenson Decl. at ¶ 16.  Plaintiffs' Counsel is likely to expend another $20,000 for post settlement matters. Steffenson Decl. at ¶ 16. Plaintiffs' Counsel has kept all time contemporaneously and has reviewed the time records to ensure was necessary and appropriate to represent Plaintiffs and achieve the current Settlement.  Steffenson Decl. at ¶ 17. Contemporaneous detailed time records can be provided if the Court wishes to review them for a lodestar analysis rather than relying on the percentage of the fund.

The reduced percentage sought of 30% is well within the range of attorney's fees, costs, and expenses previously approved as reasonable within the Eleventh

Circuit in similar common fund settlements. Courts routinely approve contingency fee awards in the amount of 33% or more, and it would be fair and reasonable to approve a nearly 30% fee here. *See e.g. Wreyford v. Citizens for Transp. Mobility, Inc.*, 2014 WL 11860700, at *1-2 (N.D. Ga. Oct. 16, 2014) (approving a one-third fee); *George v. Academy Mortgage Corp. (UT)*, 369 F. Supp. 3d 1356, 1382-83 (N.D. Ga. 2019) (awarding attorneys' fees totaling 33% of the common fund in a hybrid Rule 23 class action/FLSA collective action and collecting wage-and-hour cases in which other Eleventh Circuit district courts approved similar contingency fees); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *see also In re AremiSoft Sec. Litig.*, 210 F.R.D. 109, 128 (D.N.J. 2002) ("[S]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund.").

In the instant case, Plaintiffs stand to recover a favorable payment and net, after attorneys' fees, costs, and expenses, of approximately 50% of all unpaid wages, overtime and commissions that Plaintiffs allege are owed using the three-year, rather than two-year, statute of limitations based on Plaintiffs' analysis from Defendant's records. Moreover, as the settlement payments have been allocated by Plaintiffs' Counsel, this proposed settlement would provide Plaintiffs 100% of liquidated damages on the alleged back wages recovered. Thus, Plaintiffs' Counsel believes

23

they have obtained a significant recovery for Plaintiffs above the percentage of alleged back wages this Court has approved while approving attorney fees similar to that sought by Plaintiffs' Counsel in this matter. *Hriczo v. Braselton Fine Foods LLC*, Case No. 23-cv-00142-SJC (N.D. Ga. 2024) (recovering 27% of alleged back wages and awarding 25% of the common fund in fees which was above counsel's actual fees); *Davenport v. Sober Living America, Inc.*, Case No. 23-cv-04652-SCJ (N.D. Ga. 2024) (recovering 40% of alleged back wages and an equal amount of liquidated damages and awarding 75% of the common fund in fees); *Vega v. Hi-Tech Pharmaceuticals, Inc.*, Case No. 18-cv-01258-SCJ (N.D. Ga. 2019) (recovering 40% of alleged back wages and equal amount in liquidated damages and awarded 30% of the common fund in fees). Accordingly, given the complexity of this case and favorable recovery achieved, Plaintiffs request that this Court approve payment of attorney's fees, costs, and expenses from the Maximum Gross Settlement Amount in an amount equal to $270,234, or approximately 30% of the common fund as provided in the Agreement, which is substantially lower than Plaintiffs' Counsel's 40% contingency and approximately 30% below actual fees without a lodestar multiplier that will be incurred to fully resolve this matter.

## IV.    APPOINTMENT OF THE CLAIMS ADMINISTRATOR

The qualified settlement fund to be established under the terms of the Agreement will be administered by an independent and experienced third-party

settlement administrator. The Parties request that Rust Consulting be appointed as the settlement claims administrator ("Claims Administrator") in the Court's Approval Order. As Claims Administrator, Rust Consulting has agreed to subject itself to the jurisdiction of the Court and waive any jurisdictional objections.

## V.    **CONCLUSION**

For the reasons set forth above and for good cause shown, Plaintiffs respectfully request that this Court grant this unopposed motion and enter the Stipulated Judgment and Order, attached as Exhibit B, approving the Agreement, attached as Exhibit A, by stipulated judgment.

Respectfully submitted this 27th day of July 2025.

/s/*Dane Steffenson*
DANE STEFFENSON
GA Bar no. 677780
Dane@TheDaneLawFirm.com

DANE LAW LLC
3575 Piedmont Rd. Suite L120
Atlanta, GA 30305
(404) 919-9719

## **CERTIFICATE OF COMPLIANCE**

The above signed counsel hereby certifies that this document was prepared in Times New Roman, 14-point font, in accordance with LR 5.1(C).

25

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **Plaintiffs' Second Unopposed Motion for Stipulated Judgment and Order Approving Joint Stipulation of Collective Action Settlement and Release** with the Clerk of Court using the CM/ECF system which will automatically send email notification ore filing to all attorneys of record.

This 27th day of July 2025.

/s/Dane Steffenson_____
DANE STEFFENSON
GA Bar No. 677780
Dane@TheDaneLawFirm.com

**DANE LAW LLC**
3575 Piedmont Road
Suite L120
Atlanta, GA 30305
(404) 919-9719

*Attorney for Plaintiffs*

26